JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Reynold Dyson

**DEFENDANTS**
Gary Kao, M.D., et al.

**(b)** County of Residence of First Listed Plaintiff   New Castle County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Philadelphia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Alan M. Herman, Esq.1818 Market St.,13th Fl., Phila., PA 19103

Attorneys (If Known)
Not known at this time

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    another district
    (specify)

☐ 6 Multidistrict
    Litigation

☐ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332
Brief description of cause:
Medical Malpractice involing underdosage of brachytherapy

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
   UNDER F.R.C.P. 23

DEMAND $ in excess
of $150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
Yes but Parties and Docket Numbers Unknown At This Time
JUDGE

DOCKET NUMBER

DATE
7/02/10

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1406 No. French Street, Wilmington, DE19801

Address of Defendant: c/o Penn Medicine, 3400 Spruce Street, Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Philadelphia
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒

RELATED CASE, IF ANY: Parties & Docket Numbers Unknown At This Time

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☒  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify) Medical Malpractice
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Alan M. Herman , counsel of record do hereby certify:
☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 7/02/10          Alan M.Herman          24480
                       Attorney-at-Law         Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/02/10          Alan M. Herman          24480
                       Attorney-at-Law         Attorney I.D.#

CIV. 609 (6/08)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Reynold Dyson

           v.

Gary Kao, M.D., et al.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　　( x)

(f) Standard Management – Cases that do not fall into any one of the other tracks.　( )

| | | |
|---|---|---|
| _7/02/10_ | Alan M. Herman | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-2800 | 215-569-1606 | amherman@zarwin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REYNOLD DYSON                          :       CIVIL ACTION
1406 North French Street               :
Wilmington, DE 19801                   :
                                       :
          v.                           :       No.
                                       :
GARY KAO, M.D.                         :
c/o Penn Medicine                      :
3600 Market Street, Suite 240          :
Philadelphia, PA  19104                :       **<u>JURY TRIAL DEMANDED</u>**
          and                          :
STANLEY B. MALKOWITZ, M.D.             :
c/o Penn Medicine                      :
3600 Market Street, Suite 240          :
Philadelphia, PA  19104                :
          and                          :
UNIVERSITY OF PENNSYLVANIA             :
HEALTH SYSTEM                          :
3400 Spruce Street                     :
Philadelphia, PA  19103                :
          and                          :
TRUSTEES OF THE UNIVERSITY             :
OF PENNSYLVANIA                        :
3400 Spruce Street                     :
Philadelphia, PA  19104                :
          and                          :
HOSPITAL OF THE UNIVERSITY             :
OF PENNSYLVANIA                        :
3400 Spruce Street                     :
Philadelphia, PA  19104                :
          and                          :
PENN MEDICINE                          :
3600 Market Street, Suite 240          :
Philadelphia PA, 19104                 :

## <u>COMPLAINT</u>

Plaintiff, Reynold Dyson, hereby brings this civil action against the above-named defendants, and avers as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

2.      The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars.

3.      Venue lies in this judicial district by virtue of 28 U.S.C. § 1402(b).

## THE PARTIES

4.      Plaintiff, Reynold Dyson, is an adult individual residing at 1406 North French Street, Wilmington, DE 19801.

5.      Defendant Gary Kao, M.D. (hereinafter referred to as "Dr. Kao"), at all times relevant hereto, was a licensed physician purporting to specialize in radiation oncology, whose primary office was located at the Hospital of the University of Pennsylvania (hereinafter "HUP") at 3400 Spruce Street, Philadelphia, PA 19104.   Plaintiff is asserting a professional liability claim against this defendant.

6.      Upon information and belief, Dr. Kao was the agent, apparent agent, servant or employee of one or more of the other defendants.

7.      Defendant, Stanley Bruce Malkowitz, M.D., (hereinafter referred to as "Dr. Malkowitz") at all times relevant hereto was a licensed physician purporting to specialize in urology, whose primary office was located at HUP at 3400 Spruce Street, Philadelphia, PA  19104.  Plaintiff is asserting a professional liability claim against this defendant.

8.      Upon information and belief, Dr. Malkowitz was at all times relevant hereto  the agent, apparent agent, service or employee of one or more of the other defendants.

9.      Defendant, University of Pennsylvania Health System, (hereafter "UPHS") is an unincorporated operating division of the Trustees of the University of Pennsylvania and does business as

Penn Medicine with its principal place of business located at 3400 Spruce Street, Philadelphia, PA 19104. Plaintiff is asserting a professional liability claim against this defendant.

10.     Defendant, Trustees of the University of Pennsylvania (hereafter "Trustees"), is a non-profit corporation, organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 3400 Spruce Street, Philadelphia, PA 19104. Trustees owns and/or operates the UPHS, including the Hospital of the University of Pennsylvania, the University of Pennsylvania School of Medicine, Penn Medicine and other entities.

11.     Defendant Hospital of the University of Pennsylvania (hereinafter "HUP") is a corporation or other entity organized and existing under the laws of the Commonwealth of Pennsylvania, is engaged in the business of providing health care services within the UPHS, with its principal place of business located at 3400 Spruce Street, Philadelphia, PA 19104. Plaintiff is asserting a professional liability claim against this defendant.

12.     Defendant, PENN Medicine, is a corporation or other legal entity under whose name the defendant UPHS does business, with its principal office for business at 133 South 36th Street, Philadelphia, PA 19104. Plaintiff is asserting a professional liability claim against this defendant.


**THE RELATIONSHIP BETWEEN AND AMONG THE DEFENDANTS THE PHILADELPHIA VETERANS ADMINISTRATION MEDICAL CENTER**

13.     The Philadelphia Veterans Administration Medical Center (PVAMC) is located on the University of Pennsylvania Medical Center campus.

14.     Medical students, interns and residents of the University of Pennsylvania Medical School rotate through the PVAMC during their training.

15.     Radiation Oncology, Urologic Surgery and Surgery rotations by University of Pennsylvania Medical School students, interns and residents at the PVAMC are the responsibility of their parent departments at HUP.

16.     The Department of Radiology Oncology at HUP provides treatment services, including brachytherapy procedures for prostate cancer, at the PVAMC.

17.     The residency in Urology at HUP consists of a four-year program with rotations at HUP and the following affiliated hospitals:  Pennsylvania Hospital, the Veterans Affairs Medical Center of Philadelphia (PVAMC), the Children's Hospital of Philadelphia (CHOP), and Penn Presbyterian Medical Center.

18.     HUP Urology Residents spend three months at as a PGY-2, three months at a PGY-3, three months as a PGY-4 and three months as a Chief Resident at the PVAMC.

19.     The UPHS and/or HUP and/or PENN MEDICINE developed the policies, procedures, goals and objectives for the training of all residents who rotate through the PVAMC  These policies, procedures, goals and objectives are outlined in written policies and include:

a.     Junior residents will treat most of the prostate cancers;

b.     Residents will acquire knowledge and experience in the integrated delivery of chemotherapy with radiation;

c.     Residents will assist in determining the appropriate pre-treatment evaluation of patients and arrange for studies;

d.     Residents will assist in defining the planning target volume and treatment constraints for 3D conformal radiation therapy and to direct a dosimetrist in the development of a treatment plan for presentation to the attending physician for approval;

e.     Residents will incorporate data from CT and MRI in the planning process to define the target volume and critical organs at risk;

f.   Residents will take a lead role in the treatment planning process in the multimodality tumor board directed jointly by Radiation Oncology and Otorhinolaryngology with the support of pathology and radiology;

g.   Residents will work with medical physics and dosimetry in developing a usable treatment plan;

h.   Residents will work under the close supervision of the attending physician during their three month rotation at the PVAMC.

i.   Residents will develop a comprehensive understanding of the literature and current clinical research in tumors commonly seen in the PVAMC, particularly prostate cancer, and junior residents will treat most of the prostate cancers;

j.   Residents will integrate information obtained to determine the potential effects of both uncontrolled tumor and treatment and will use this information in the development of a treatment plan;

k.   Junior residents will complete 8 prostate brachytherapy procedures and help coordinate the follow-up care.

20.   In May of 1996, the PVAMC and the UPHS and/or HUP entered into a contract for a base year plus two option years during which the University of Pennsylvania was to provide at least the following for Radiation Oncology Services at the PVAMC and for which it would be compensated by the PVAMC:

a.   The services of 1.25 Full Time Equivalent (FTE) physicians;

b.   1.0 FTE physicists;

c.   4.0 FTE radiation therapy technicians;

d.   1.0 FTE dosimetrist; and

e.   1.0 FTE engineer.

21.   The 1996 contract expired in 1999, and from May 1, 1999 through April 25, 2005, the PVAMC continued to pay the UPHS and/or HUP for Radiation Oncology Services without a contract or other agreement in placed.

22.     The UPHS and/or HUP would send invoices directly to the PVAMC Medical Director's office.

23.     In 2002, the PVAMC starting performing prostate brachytherapy under a contract with the UPHS and/or HUP.  Its first prostate brachytherapy procedure was performed on February 25, 2002.

24.     The Head of the brachytherapy program at the PVAMC was defendant, Gary Kao, M.D., who was a physician in HUP's Department of Radiation Oncology.

25.     The contract between the PVAMC and the UPHS and/or HUP did not delineate responsibilities for peer review or other quality assurance processes.

26.     Pursuant to this contract, the UPHS and/or HUP had responsibility for Information Technology (IT) support systems for the Radiation Oncology Service.

27.     In a contract between the UPHS and/or HUP and the PVAMC in 2005, IT responsibility was to shift from the UPHS and/or HUP to the PVAMC.  However, equipment in the brachytherapy program at the PVAMC continued to be maintained by the UPHS and/or HUP.

28.     The Radiation Oncology Services identified in the 2005 contract include 1.5 FTE radiation oncologist; 1.5 FTE radiation physicist; 1.0 FTE dosimetrist; and 5.0 FTE radiation therapists.

29.     The UPHS and/or HUP developed the price proposals, including an hourly rate for the radiation oncologists based on representations regarding the total salary, benefits, and other associated costs for the physicians who held Associate Professor and Assistant Professor faculty appointments at the University of Pennsylvania.

30.     From November 14, 2006 through November 15, 2007, there was an Information Technology (IT) systems failure that resulted in a 12-month time period during which PVAMC brachytherapists were unable to obtain post-operative dosimetry data.  Despite this IT problem, prostate brachytherapy continued during this time.

31.    In May of 2008, a brachytherapy dosing error at the PVAMC trigged a full review of the brachytherapy program.

32.    In June of 2008, a committee was empanelled at the request of the Dean of the University of Pennsylvania School of Medicine to review the Department of Radiation Oncology's prostate implant brachytherapy program, with a particular focus on quality assurance and quality control measures in the department.

33.    Also in June of 2008, the PVAMC brachytherapy program was shut down.  Its Director, defendant Gary Kao, M.D., stopped treating patients at both HUP and the PVAMC.

34.    In September of 2008, the Veteran's Affairs Administrative Board of Investigation recommended disciplinary action against several key individuals.

35.    In June of 2009, the first Congressional Hearing was held on dosing errors within the brachytherapy program.

36.    In August of 2009, radiation oncologist Richard Whittington, M.D., Chief of the PVAMC Radiation Oncology Department and Associate Professor of Radiation Oncology at the University of Pennsylvania School of Medicine, was suspended for three (3) days.

37.    In October of 2009, PVAMC radiation safety officer, Mary E. Moore, received a letter of reprimand.

38.    In January of 2010, the PVAMC conceded violations issued against it in the brachytherapy program.

39.    In March of 2010, the Nuclear Regulatory Commission (NRC) proposed a $227,500.00 fine against the Veterans' Administration for violations of the NRC regulations, being one of the largest fines ever proposed by the NRC for medical errors.

40.     The primary violations cited by the NRC related to the lack of written procedures for proper implantation of brachytherapy and lack of procedures to verify proper implementation post-brachytherapy treatment.  Other violations included incorrect doses of radioactive seeds being ordered and placed into patients' prostates and surrounding organs; lack of training on the NRC's definition of a "medical event" and reporting requirements; and the failure to report medical events to the NRC no later than the next calendar day.

41.     The VA Office of Inspector General issued a report on May 3, 2010 entitled:  "Healthcare Inspection:  Review of Brachytherapy Treatment of Prostate Cancer, Philadelphia, Pennsylvania, and Other VA Medical Centers."

42.     The VA Office of Inspector General report made several observations and conclusions, including:

a.      Physician privilege folders contained general attestations of practitioners' competence, but no specific data, quality assurance or otherwise, that actually demonstrated observation, critique, comments, statistics, etc. that could be evidence of ongoing proficiency in performing brachytherapy;

b.      There were substantial deficiencies in quality oversight of the brachytherapy program, including no evidence of prostate brachytherapy case review by the UPHS and/or HUP;

c.      During 2002-2003, tapes were taken to HUP to be converted by staff within the brachytherapy program;

d.      Between May 1, 1999 and April 25, 2005, the PVAMC paid the UPHS and/or HUP for radiation therapy services without a contract or other agreement authorizing payment for these services;

e.      From April 26, 2005 through 2009, the PVAMC paid the UPHS and/or HUP for radiation therapy services under an Interim Agreement that violated PVAMC policy and was unnecessary because the PVAMC had issued a request for a proposal, had received such a proposal from the UPHS and/or HUP, and had a pre-review award conducted on the proposal; and

f.      PVAMC had little or no control over the hours which the UPHS and/or HUP reported that its physicians had worked.

43.     Defendant, Dr. Gary Kao, claims to have reported problems in the PVAMC brachytherapy program to Stephen Hahn, M.D., the Chair of the HUP's Department of Radiation Oncology, and that Dr. Hahn failed to address his complaints.  Dr. Hahn requested that Dr. Kao suspend his clinical practice when the brachytherapy dosing errors were uncovered.

44.     Dr. Joel Zaslow, Chair of the PVAMC's Radiation Safety Committee testified at a Nuclear Regulatory Commission Pre-Decisional Enforcement Conference that UPHS and/or HUP medical physicists did not report concerns and that PVAMC had no control over the medical treatment provided by the UPHS and/or HUP physicians.

45.     On April 14, 2010, the United Statements Department of Veterans Affairs accepted the NRC's findings and paid the $227,500.00 fine.

## THE OPERATIVE FACTS

46.     Plaintiff, Reynold Dyson, is a United States veteran who was diagnosed with prostate cancer in 2006 through the VA medical system.

47.     On May 7, 2007, Mr. Dyson had brachytherapy treatment performed at the PVAMC under the direction of Radiation Oncologist, Dr. Kao, and Urologist, Dr. Malkowicz.

48.     Brachytherapy is a procedure, performed by a Radiation Oncologist and Urologist, where a number of metal "*seeds*" containing radioactive material are surgically implanted into the patient's prostate so as to destroy the cancer cells within the prostate.

49.     During the seed implantation (performed by Dr. Kao with the assistance of Dr. Ramji Rajendran, a resident) on May 7, 2007, seventy-seven (77) seeds were inserted with iodine radioisotope, after which time diagnostic cystoscopy (performed by Dr. Malkowicz with the assistance of Dr.

Alexander Kutikov, a resident), was done to ensure that there was no seed implantation into the prostatic fossa or the bladder.

50.     Pursuant to a contractual agreement between the PVAMC and one or more of the other defendants, Mr. Dyson's brachytherapy procedure of May 7, 2007 was performed, and his treatment plan, written directive and post-implant dose verification were determined and/or approved by defendants Dr. Kao, a radiation oncologist, and Dr. Malkowicz, a urologist, who, at all times relevant hereto, were acting as the agents, apparent agents, servants and/or employees of one or more of the entities named as defendants herein.

51.     Other persons acting as agents, apparent agents, servants or employees of the defendants assisted defendants Dr. Kao and Dr. Malkowitz, or were otherwise involved as medical and/or radiation safety professionals in Plaintiff's brachytherapy procedure of May 7, 2007, including the determination and/or approval of Plaintiff's treatment plan, written directive and post-implant dose verification, and post-implantation follow-up care.

52.     On May 8, 2007, Mr. Dyson had a CT Scan of his pelvis performed which revealed that the prostatic brachytherapy seeds were in place.

53.     Mr. Dyson received a letter in the mail dated July 2, 2008 from Mr. Richard Cintron, Director of the PVAMC Department of Veterans' Affairs, providing that the "Philadelphia VA Medical Center has begun a review of our brachytherapy program, including the treatment of patients who, like you, received care through that program.  Our review of your treatment program has indicated that there is a possibility that you received a radiation dose to your prostate gland that was less than your physician intended."

54.     On July 14, 2008, a Disclosure of Adverse Event Note indicates the following: that Dr. Kao performed brachytherapy on Mr. Dyson, but was unable to make calls, so Amit Maity, M.D. (Chief of Radiation Therapy) took the responsibility of notifying the patient and referring physician.

55.     Commenting on his July 14, 2008 discussion with Mr. Dyson, Dr. Maity noted that he "informed him that we are in the midst of a review of our prostate brachytherapy program.  As part of that review we repeated his CT scan. Based on this new scan, we determined that the dose to the patient was lower than planned."; "What do we recommend now? I told patient that his case will be reviewed by an external physician, and that based on this we will give him recommendations"; "We will call the patient after we have had a chance to formulate recommendations:  I contacted Dr. Ismail, who is the referring urologist from the Wilmington VA, on 7/11/08 and notified him of the under dosage."

56.     Mr. Dyson received a follow up letter in the mail dated July 22, 2008 from Mr. Citron of the PVAMC Department of Veterans' Affairs regarding the results of his CT scan, specifically providing that "the results of the follow up CT scan indicate that the treatment you received did not meet the VA's high standard of care. . . . We have also advised your VA primary care physician that the prostate treatment you received did not meet VA standards."

57.     During Mr. Dyson's prostate brachytherapy procedure of May 7, 2007, the administered dose of radiation was improper.

58.     As a result of an improper and inadequate treatment plan, Mr. Dyson received an improper dose of radiation to his prostate.

59.     Additionally, as a result of the aforesaid inadequate dosage, Mr. Dyson received an improper dose of radiation to the healthy tissues surrounding his prostate.

60.     As a direct and proximate result of the aforesaid improper dosage, the healthy tissues surrounding Mr. Dyson's prostate have been damaged by radiation, and Plaintiff suffers from

obstructive urinary symptoms, including incomplete emptying, frequency, intermittency, urgency, weak stream, straining, nocturia, erectile dysfunction, pain and suffering, anxiety, embarrassment and humiliation, loss of life's pleasures, and increased risk of cancer recurrence, and other injuries, the full extent of which are not yet known, and some or all of which may be permanent.

61.     Mr. Dyson did not learn of the aforesaid negligence until on or after July 14, 2008, when Dr. Maity informed him that he received a lower radiation dosage than planned and that future treatment recommendations would be discussed after his case was reviewed with an external physician.

62.     Thus, Mr. Dyson did not know or have reason to know that he had been damaged by the medical negligence set forth in this Complaint until on or after July 14, 2008.

63.     As a direct and proximate result of the medical negligence set forth in this Complaint, Mr. Dyson has suffered and will continue to suffer in the future from many physical and emotional injuries.

## COUNT I – MEDICAL / PROFESSIONAL NEGLIGENCE
## PLAINTIFF v. ALL DEFENDANTS

64.     Plaintiff incorporates the allegations set forth in paragraphs one (1) through sixty-three (63) above as fully as though each was herein set forth at length.

65.     Defendant Dr. Kao held himself out to be a physician who possessed the required level of skill, expertise and knowledge in the highly specialized field of radiation oncology.

66.     The aforesaid misplacement of radioactive seed implants and inadequate dosing of Plaintiff's prostate were caused by defendant Dr. Kao's deviation from the standard of care applicable to radiation oncologists.

67.     Defendant Dr. Kao deviated from the applicable standard of care in the following respects:

(a)     failing to use prostate brachytherapy protocols, techniques and procedures required by the applicable standard of care;

(b)     negligently misplacing many radioactive seeds during Plaintiff's prostate brachytherapy procedure;

(c)     failing to obtain accurate and valid post implant dose verification data to determine whether and to what extent an adequate dose of radiation was provided to Plaintiff's prostate and to determine whether and to what extent the tissues surrounding Plaintiff's prostate may have received an excessive dose of radiation;

(d)     failing to properly and correctly interpret post-implant dose verification data;

(e)     failing to take timely and adequate steps to remedy the misplacement of radioactive seeds during the prostate brachytherapy procedure;

(f)     failing to possess and exercise the required skill, expertise and knowledge in brachytherapy procedures;

(g)     failing to act in accordance with applicable standard of care;

(h)     failing to determine and prepare a proper and adequate treatment plan and/or written directive for Plaintiff;

(i)     failing to perform Plaintiff's prostate brachytherapy procedure in accordance with a proper and adequate treatment plan and written directive;

(j)     failing to provide Plaintiff's prostate with an adequate dose of radiation;

(k)     causing the tissues surrounding Plaintiff's prostate to be needlessly damaged;

(l)     causing Plaintiff to lose his chance at a cure;

(m)     increasing the risk of harm to Plaintiff;

(n)     failing to inform Plaintiff that he received an improper dose of radiation to his prostate;

(o)     failing to inform Plaintiff that the tissues surrounding his prostate had been needlessly damaged by radiation;

(p)     failing to recognize that Plaintiff received an improper dose of radiation to his prostate;

(q)     failing to take timely and adequate steps to remedy the inadequate dose of radiation to Plaintiff's prostate;

(r)     failing to take timely and adequate steps to remedy Plaintiff's brachytherapy procedure;

(s)     failing to recognize and remedy computer interface problems which made it difficult or impossible to obtain accurate and valid post-implant dose verification data;

(t)     failing to acknowledge and report medical errors;

(u)     failing to adequately monitor and oversee those medical professionals performing Plaintiff's brachytherapy procedure over whom he had control.

68.     Defendant, Dr. Malkowitz, deviated from the applicable standard of care as set forth in paragraphs 67 (a) through (u) above, which are fully incorporated herein by reference against this defendant.

69.     Defendant, UPHS, deviated from the accepted standard of care in the following respects:

a.     Entering into contracts with the PVAMC for Radiation Oncology Services, including brachytherapy, when it did not have experienced, competent, knowledgeable, or trained staff to perform all necessary aspects of brachytherapy procedures;

b.     Appointing Dr. Kao as the Director of the brachytherapy program at the PVAMC when it knew or should have known that Dr. Kao did not have the experience, competence, knowledge or training to perform and/or supervise all necessary aspects of brachytherapy procedures;

c.     Appointing Dr. Malkowitz, a urologist, as part of the brachytherapy treatment team at the PVAMC, when it knew or should have known that he did not have the experience, competence, knowledge or training to perform and/or supervise all necessary aspects of brachytherapy procedures;

d.     Allowing multiple residents to rotate through the PVAMC brachytherapy program, including at least eight (8) residents in Urology and at least four (4) residents in Radiation Oncology, without the training necessary to participate in brachytherapy procedures;

e.     Providing surgeons, medical physicists, radiologists, endocrinologists, additional radiation oncologists, radiation therapy technicians, dosimetrists and an engineer to PVAMC pursuant to contract for the PVAMC brachytherapy program without proper training or supervision;

f.     Developing a training manual for the brachytherapy program at the PVAMC which failed to properly define a "medical event" which was reportable to the NRC, and failing to train its staff regarding the training manual;

g.     Delaying in the notification to patients of improper dosing during brachytherapy procedures;

h.     Delaying in post-implant CT and other radiologic studies to monitor the seed placement in patients and to confirm proper dosing and seed placement;

i.     Failing to have a peer review or quality assurance procedure in place to oversee and monitor the care being provided by the physicians and residents it assigned to PVAMC pursuant to contract;

j.     Providing physicians and residents to the PVAMC for involvement in the brachytherapy program without a valid contract in place;

k.     Developing policies, procedures and goals and objectives for all residents who rotate through the PVAMC during the residency, without training the residents so that they understood the polices and met the goals and objectives;

l.     Negligently maintaining and failing to maintain Information Technology (IT) support systems for the Radiation Oncology Service at the PVAMC, as required by contract, including CT scanners and other necessary equipment;

m.     Allowing its physicians and residents which it assigned to the PVAMC pursuant to contract to continue to administer brachytherapy to patients despite an Information Technology (IT) systems failure, resulting in a 12-month delay in obtaining post-operative dosimetry data;

n.     Having a lack of written procedures for proper implantation of brachytherapy and lack of procedures to verify proper implementation of post-brachytherapy treatment;

o.     Violating NRC reporting requirements and failing to report medical events to the NRC no later than the next calendar day;

p.     Failing to act upon complaints about problems in the PVAMC brachytherapy program, which Dr. Kao claims he reported to Stephen Hahn, M.D., the Chair of HUP's Department of Radiation Oncology;

q.     Failing to use prostate brachytherapy protocols, techniques and procedures required by the applicable standard of carte;

70.     The negligence of defendant, Trustees, consists of those acts and failures to act identified in paragraphs 67 (a) through (q) above, which are fully incorporated herein against this defendant.

71.     The negligence of defendant, HUP, consists of those acts and failures to act identified in paragraphs 67 (a) through (q) above, which are fully incorporated herein against this defendant.

72.     The negligence of defendant, PENN Medicine, consists of those acts and failures to act identified in paragraphs 67 (a) through (q) above, which are fully incorporated herein against this defendant.

73.     As a direct and proximate result of the professional negligence of the defendants as set forth above, plaintiff received an improper dose of radiation to his prostate, the healthy tissues surrounding Mr. Dyson's prostate have been damaged by radiation, and Plaintiff suffers from medical ailments caused by that damage, including inability to urinate, irritative voiding symptoms, erectile dysfunction, urinary obstruction, and other injuries, the full extent of which are not yet known, and some or all of which may be permanent.

74.     As a direct and proximate result of the professional negligence of the defendants as set forth above, the tissues surrounding plaintiff's prostate have been needlessly damaged by radiation.

75.     As a direct and proximate result of the professional negligence of the defendants as set forth above, plaintiff has suffered severe, extensive and disabling physical and emotional injuries, many, if not all, of which are permanent.

76.     As a direct and proximate result of the professional negligence of the defendants as set forth above, plaintiff has suffered and will continue to suffer, for the remainder of his natural life, severe and excruciating physical pain, emotional distress, fear of death, humiliation, embarrassment, loss of sexual function, loss of well-being, anxiety, feelings of hopelessness and depression, with consequent restrictions and limitations in his ability to engage in his normal and customary activities and pursuits.

77.     As a direct and proximate result of the professional negligence of the defendants, as set forth above, plaintiff has required medical care and will continue to require medical care for the remainder of his natural life, and he has incurred and will continue to incur charges for such medical care.

78.     As a direct and proximate result of the professional negligence of the defendants as set forth above, plaintiff has sustained a permanent diminution in his ability to enjoy life and life's pleasures.

79.     As a direct and proximate result of the professional negligence of the defendants as set forth above, plaintiff's chances of a cure for his prostate cancer have been diminished, and he has been placed at increased risk of harm as a result thereof.

WHEREFORE, plaintiff demands judgment in his favor and against the defendants, jointly and severally, for compensatory damages in an amount in excess of $150,000.00, exclusive of interest and costs, together with an award of costs and fees as permitted by law.

## COUNT II – CORPORATE LIABILITY

### PLAINTIFF vs. UPHS, TRUSTEES, HUP, AND PENN MEDICINE

80.     Plaintiff incorporates herein by reference all averments set forth in this Complaint above.

81.     At all times relevant hereto, defendants UPHS, Trustees, HUP, and PENN Medicine owed non-delegable duties to the plaintiff pursuant to the Pennsylvania Supreme Court holding in Thompson v. Nason Hospital, 591 A.2d 703 (Pa. 1991), which identified four categories of non-delegable duties:

  a.     the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment;

  b.     the duty to retain and select only competent physicians;

     c.    the duty to oversee all persons who practice medicine within its walls as to patient care;

     d.    the duty to formulate, adopt, and enforce adequate rules and policies to ensure quality care for patients.

82.     These defendants breached these duties which they owed the plaintiff.

83.     These defendants acted in deviation from the accepted standard of care and such conduct was a substantial factor in bringing about harm to the plaintiff.

84.     These defendants had actual and/or constructive notice of the facts previously alleged.

85     These defendants are entities separate and apart from their physician members.

86.     In addition to the allegations of professional negligence alleged above in Count I, defendants, UPHS, Trustees, HUP and Penn Medicine are each additionally corporately negligent for the following acts and/or omissions:

     (a)    failing to discharge the duty and responsibility to provide competent and qualified medical professionals;

     (b)    failing to discharge the duty and responsibility to provide competent medical care;

     (c)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that medical care is provided to patients at the PVAMC in accordance with all applicable standards of care;

     (d)    failing to establish reasonable and necessary standards of professional practice at the PVAMC;

     (e)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that radioactive seeds are implanted during prostate brachytherapy procedures in accordance with the applicable treatment plan and written directive as required by 10 CFR § 35.41(a)(2);

     (f)    failing to establish proper and adequate policies, protocols and procedures that address methods for verifying that radioactive seeds are implanted during prostate brachytherapy procedures in accordance with the treatment plan and written directive as required by 10 CFR § 35.41(b)(2);

(g)     failing to establish proper and adequate policies, protocols and procedures that address verifying that radioactive seeds are implanted during brachytherapy procedures in accordance with the written directive as required by 10 CFR § 35.41(b)(2);

(h)     failing to adequately and properly train its staff;

(i)     failing to adequately and properly supervise its staff;

(j)     failing to adequately and properly train supervised individuals in regard to the identification and reporting of medical events as required by 10 CFR § 35.27(a)(1);

(k)     failing to instruct appropriate non-supervised individuals regarding the identification and reporting of medical events as required by 10 CFR § 19.12(a)(4);

(l)     failing to timely or adequately report medical events to the Nuclear Regulatory Commission (hereinafter referred to as "NRC") as required by 10 CFR § 35.3045(c);

(m)     failing to properly and adequately record radioactive doses on written directives with respect to prostate brachytherapy procedures as required by 10 CFR § 35.40(b);

(n)     failing to provide complete and accurate information to the NRC as required by 10 CFR § 35.3045(d);

(o)     failing to provide staff adequately trained in performing prostate brachytherapy procedures and post-implant dose verification;

(p)     failing to provide staff adequately trained in determining and carrying out proper and effective prostate brachytherapy treatment plans;

(q)     failing to establish proper and adequate policies, protocols and procedures necessary to make certain that dosing errors during prostate brachytherapy procedures are timely and adequately identified, reported and remedied;

(r)     failing to properly or adequately oversee its medical staff to make certain the they perform prostate brachytherapy procedures in accordance with the applicable standards of care;

(s)     failing to properly or adequately oversee its medical staff to make certain that they determine and prepare correct and adequate prostate brachytherapy treatment plans and written directives, and perform correct and adequate post-implant dose verification;

(t)    failing to establish proper and adequate policies, protocols and procedures governing the care of prostate brachytherapy patients, to ensure that prostate brachytherapy care is rendered in accordance with all applicable standards of care;

(u)    failing to timely notify Plaintiff of the misplacement of radioactive seeds and dosing errors during his brachytherapy procedure of May 7, 2007;

(v)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain the prostate brachytherapy treatment plans and written directives are determined and prepared, and that prostate brachytherapy procedures are performed, in accordance with all applicable standards of care;

(w)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that accurate and complete brachytherapy post-implant dose verification data are timely obtained in accordance with all applicable standards of care;

(x)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that prostate brachytherapy seeds implants are not misplaced;

(y)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that adequate doses of radiation are given to prostate brachytherapy patients;

(z)    failing to establish proper and adequate policies, protocols and procedures necessary to make certain that dosing errors are timely and adequately detected by way of post-implant dose verification;

(aa)    failing to timely address or remedy computer interface problems which made it difficult or impossible to obtain accurate post-implant dose verification data;

(bb)    failing to establish proper and adequate policies, protocols and procedures necessary for the timely identification and reporting of medical errors;

(cc)    failing to establish proper and adequate policies, protocols and procedures necessary to ensure that proper and safe use of radioactive seeds during prostate brachytherapy procedures;

(dd)    failing to establish proper and adequate policies, protocols and procedures necessary to ensure that medical information is properly communicated and shared;

20

(ee)   entering into contracts with the PVAMC for Radiation Oncology Services, including brachytherapy, when it did not have experienced, competent, knowledgeable, or trained staff to perform all necessary aspects of brachytherapy procedures;

(ff).   appointing Dr. Kao as the Director of the brachytherapy program at the PVAMC when it knew or should have known that Dr. Kao did not have the experience, competence, knowledge or training to perform and/or supervise all necessary aspects of brachytherapy procedures;

(gg)   appointing Dr. Malkowitz, a urologist, as part of the brachytherapy treatment team at the PVAMC, when it knew or should have known that he did not have the experience, competence, knowledge or training to perform and/or supervise all necessary aspects of brachytherapy procedures;

(hh)   allowing multiple residents to rotate through the PVAMC brachytherapy program, including at least eight (8) residents in Urology and at least four (4) residents in Radiation Oncology, without the training necessary to participate in brachytherapy procedures;

(ii)   providing surgeons, medical physicists, radiologists, endocrinologists, additional radiation oncologists, radiation therapy technicians, dosimetrists and an engineer to PVAMC pursuant to contract for the PVAMC brachytherapy program who were not sufficiently trained to participate in brachytherapy procedures;

(jj)   developing a training manual for the brachytherapy program at the PVAMC which failed to properly define a "medical event" which was reportable to the NRC, and failing to train its staff regarding the training manual;

(kk)   delaying in the notification to patients of improper dosing during brachytherapy procedures;

(ll)   delaying in post-implant CT and other radiologic studies to monitor the seed placement in patients and to confirm proper dosing and seed placement;

(mm)   failing to have a peer review or quality assurance procedure in place to oversee and monitor the care being provided by the physicians and residents it assigned to PVAMC pursuant to contract;

(nn)   providing physicians and residents to the PVAMC for involvement in the brachytherapy program without a valid contract in place;

(oo)   developing policies, procedures and goals and objectives for all residents who rotate through the PVAMC during the residency, without training the residents so that they understood the polices and met the goals and objectives;

(pp)    negligently maintaining and failing to maintain Information Technology (IT) support systems for the Radiation Oncology Service at the PVAMC, as required by contract, including CT scanners and other necessary equipment;

(qq)    allowing its physicians and residents which it assigned to the PVAMC pursuant to contract to continue to administer brachytherapy to patients despite an Information Technology (IT) systems failure, resulting in a 12-month delay in obtaining post-operative dosimetry data;

(rr)    having a lack of written procedures for proper implantation of brachytherapy and lack of procedures to verify proper implementation of post-brachytherapy treatment;

(ss)    violating NRC reporting requirements and failing to report medical events to the NRC no later than the next calendar day;

(tt)    failing to act upon complaints about problems in the PVAMC brachytherapy program, which Dr. Kao claims he reported to Stephen Hahn, M.D., the Chair of HUP's Department of Radiation Oncology; and

(uu)    failing to use prostate brachytherapy protocols, techniques and procedures required by the applicable standard of carte.

87.    As a direct and proximate result of the corporate negligence of these defendants as set forth above, the plaintiff suffered those injuries, damages and losses set forth in paragraphs 60 and 73 through 79 above, which are fully incorporated into this Count.

WHEREFORE, plaintiff demands judgment in his favor and against the defendants, jointly and severally, for compensatory damages in an amount in excess of $150,000.00, exclusive of interest and costs, together with an award of costs and fees as permitted by law.

## COUNT III – RESPONDEAT SUPERIOR

### PLAINTIFF vs. ALL DEFENDANTS

88.    Reynold Dyson hereby incorporates by reference all paragraphs above of this Complaint, the same as if set forth at length hereinafter.

89.    At all times relevant hereto, Defendants, Dr. Kao and Dr. Malkowitz, were employees, servants, and/or workers of one or more of the defendants.

90.    At all times relevant hereto, Defendants, Dr. Kao and Dr. Malkowitz were acting within the course and scope of their employment with one or more of the defendants.

91.    Defendants, UPHS, Trustees, HUP, and Penn Medicine are therefore liable to Plaintiff under the theory of Respondeat Superior.

92.    Additional medical providers and administrators who were also the employees, servants and/or workers of one or more of defendants UPHS, Trustees, HUP, and/or Penn Medicine also participated in the brachytherapy program by providing treatment to patients such as Mr. Dyson, for which the defendants are liable under principals of Respondeat Superior.

93.    The conduct of the Defendants caused and contributed to cause Plaintiff's injuries and damages as set forth in paragraphs 60 and 73 through 79, which are fully incorporated herein by reference.

WHEREFORE, plaintiff demands judgment in his favor and against the defendants, jointly and severally, for compensatory damages in an amount in excess of $150,000.00, exclusive of interest and costs, together with an award of costs and fees as permitted by law.

## COUNT V - PUNITIVE DAMAGES

## PLAINTIFF v. DR. KAO, DR. MALKOWITZ, UPHS, TRUSTEES, HUP and PENN MEDICINE

100.    Plaintiff hereby incorporates by reference all factual averments above of this Complaint, the same as if set forth at length hereinafter.

101.    The facts averred above, including the improper implantation of radioactive brachytherapy seeds, and the Defendants' subsequent attempts to mask the mistakes, and all reasonable inferences which can be drawn from these facts, demonstrates conduct so outrageous as to rise to the level of intentional, willful, wanton, and/or reckless conduct.

102.    The facts averred above, and all reasonable inferences which can be drawn from those facts, demonstrates reckless indifference to the rights, health, safety and welfare of Plaintiff, Reynold Dyson.

103.    The facts averred above, and all reasonable inferences which can be drawn from those facts, demonstrate that the Defendants knew or had reason to know of facts which created a high risk of physical harm to Plaintiff.

104.    The facts averred above, and all reasonable inferences which can be drawn from those facts, demonstrate that the Defendants proceeded to act in conscious disregard of or indifference to the known risk of serious harm to Plaintiff.

WHEREFORE, plaintiff demands judgment in his favor and against the defendants, jointly and severally, for punitive damages in an amount in excess of $150,000.00, exclusive of interest and costs, together with an award of costs and fees as permitted by law.

ZARWIN BAUM DeVITO KAPLAN SCHAER
& TODDY, P.C.

ALAN M. HERMAN, ESQUIRE
Identification No.:  24480
1818 Market Street, 13th Floor
Philadelphia, PA 19103
(215) 569-2800 - Main
(215) 569-1606 – Fax
amherman@zarwin.com
Attorneys for Plaintiff, Reynold Dyson

DATED: _7/2/10_

26

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Reynold Dyson | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Gary Kao, M.D., et al. | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Gary Kao, M.D.
c/o Penn Medicine
3600 Spruce Street, Suite 240
Philadelphia, PA 19104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑  I returned the summons unexecuted because _____ ; or

❑  Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Reynold Dyson | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| Gary Kao, M.D., et al. | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Stanley B. Malkowitz, M.D.
c/o Penn Medicine
3600 Spruce Street, Suite 240
Philadelphia, PA 19104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                              *Server's signature*

                                     _____
                                              *Printed name and title*


                                     _____
                                              *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| Reynold Dyson | ) |
| | ) |
| *Plaintiff* | ) |
| v. | )     Civil Action No. |
| Gary Kao, M.D., et al. | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  University of Pennsylvania Health System
3400 Spruce Street
Philadelphia, PA 19104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____                _____

                                                *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Pennsylvania

| | |
|---|---|
| Reynold Dyson | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No. |
| Gary Kao, M.D., et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Trustees of the University of Pennsylvania
3400 Spruce Street
Philadelphia, PA 19104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*Michael E. Kunz*
*Clerk of Court*

Date: _____        _____
                                                           *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                        *Server's signature*

                                _____
                                        *Printed name and title*

                                _____
                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Pennsylvania

| | | |
|---|---|---|
| Reynold Dyson | ) | |
| _Plaintiff_ | ) ) | |
| v. | ) | Civil Action No. |
| Gary Kao, M.D., et al. | ) ) ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   Hospital of the University of Pennsylvania
3400 Spruce Street
Philadelphia, PA 19104


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:



If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


_Michael E. Kunz_
_Clerk of Court_


Date: _____            _____
_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Reynold Dyson | ) | |
| _Plaintiff_ | ) ) | |
| v. | ) | Civil Action No. |
| Gary Kao, M.D., et al. | ) ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  Penn Medicine
3400 Spruce Street
Philadelphia, PA 19104


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


_Michael E. Kunz_
_Clerk of Court_


Date: _____          _____

_Signature of Clerk or Deputy Clerk_

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏  I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏  I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏  I returned the summons unexecuted because _____ ; or

❏  Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                    *Server's signature*

                                                                    _____
                                                                    *Printed name and title*


                                                                    _____
                                                                    *Server's address*

Additional information regarding attempted service, etc: